HEARD NOVEMBER TERM, 1873.

## DUNN *vs.* SPEARS.

Rent cannot be secured by a lien on the crop, taken under the Act to secure "advances either in money or supplies."

BEFORE MOSES, J., AT UNION, —— TERM, 1873.

Action by Philip Dunn, Sheriff of Union County, against A. D. Spears, James D. Sartor, Nelson Kelly, Samuel Sims and George Gallman, to compel the defendants to interplead under § 145 of the Code of Procedure.

The case was briefly as follows: Under an order of Judge Thomas, made in February, 1870, directing the Clerk of the Court to lease certain lands and secure the payment of the rent by the bond of the lessee and a lien on the crops to be grown on the lands, the defendant, Spears, then Clerk of the Court, leased for the year 1871 a tract of land to one McJunkin, and, to secure the rent

agreed to be paid, took from McJunkin a lien on the crops to be made that year on the demised premises. The lien bore date February 20th, 1871, and was recorded the same day. On March 20th, 1871, McJunkin gave to the defendant, Sartor, a lien on the same crops, to secure advances in money or supplies not to exceed $1,000. This lien was recorded April 6th of the same year. The defendants, Kelly, Sims and Gallman, were laborers employed by McJunkin to make the crop, under a contract entitling them to one-half the cotton and corn made.

Under warrants issued to enforce the liens of Spears and Sartor the plaintiff seized the crops and afterwards sold them for $1,073.10, an amount insufficient to satisfy the claims of the defendants. This action was then brought to compel the defendants to interplead and submit their rights to the adjudication of the Court.

His Honor the presiding Judge made a decree that the money should be applied : (1) To the payment of the laborers ; (2) to the satisfaction of the lien of Sartor ; and, (3) if any balance remained, that it should be paid on the claim of Spears.

Spears appealed, but before the appeal was heard the claim of the laborers was settled by consent of all parties, and the only question that remained for decision was, as between the liens of Spears and Sartor, which of the two was entitled to priority of payment.

*Bobo*, for appellant, contended that rent came within the meaning of the term "supplies," as used in the "Act to secure advances for agricultural purposes," and could, therefore, be secured by a lien on the crops.

*Wallace*, contra : The crops were not *in esse* when the contract with Spears was made. That contract, therefore, cannot be supported as a chattel mortgage valid at common law, for such a mortgage can only be given of chattels existing at the time and enumerated therein. Nor is it valid as a lien under the Act to. secure advances for agricultural purposes. That Act provides for a lien on crops to be made, to secure advances on "money or supplies." Rent comes within the meaning of neither term, as used in the Act, and cannot, therefore, be secured by a lien thereunder. It follows that Sartor's lien, which is a valid one, is entitled to priority of payment. The Judge so held in the Court below, and the appeal must be dismissed.

Jan. 8, 1874. The opinion of the Court was delivered by

Moses, C. J. The question in the case before us is to be confined to the relative rights of Spears and Sartor, under their respective contracts. The claims of the laborers, it is conceded, have been satisfied.

It is immaterial, for the solution of the points raised, whether Spears, the Clerk of the Court, had authority, under the order of Judge Thomas, of 23d February, 1870, to rent out the plantation for the year 1871. The whole difference between the parties, as understood at the argument, consists in the construction which they severally give to the 55th Section of the 120th Chapter of the General Statutes, p. 557. They aver no rights independent of it. Both recognize its validity, by claiming priority under it, and that side is to prevail in whose favor such priority may be determined.

The Act refers, in its language, to "advances, either in money or supplies, to any person or persons who are engaged, or about to engage, in the cultivation of the soil. The person or persons making such advances shall be entitled to a lien on the crop which may be made during the year upon the land, in the cultivation of which the advances so made have been expended, in preference of all other liens, existing or otherwise." It really does appear that the mere recital of the statute at once settles the question. It contemplates the possession of the land by the person engaged in its culture, and proposes to secure the money and supplies necessary to its proper cultivation, by a lien on the crop which may be thereon made. The advances are supposed to be expended in the cultivation of the crop, both by affording the labor necessary for the purpose and the means of sustaining the labor itself.

Rent cannot enter into the lien as an incident, for it is neither money nor a thing supplied. The Act gives no lien for the use of the land—but only for what is necessary for the cultivation of the land itself. So far from rent being a supply, it is "a profit issuing yearly out of the land." It cannot be "expended in the cultivation of the soil," and the Act clearly refers only to such advances as can be so expended.

The motion is dismissed.

*Wright*, A. J., and *Willard*, A. J., concurred.